

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2013 Grand Jury

| UNITED STATES OF AMERICA, | No. CR 12-1170(B)-MWF |
|---|---|
| Plaintiff, | **SECOND SUPERSEDING INDICTMENT** |
| v. | |
| ADELINE EKWEBELEM, aka "Adeline Maduabuchi," ROMIE PORTER TUCKER, JR., aka "Romy," aka "Roman," aka "Ron," MARITZA HERNANDEZ, CINDY SANTANA aka "Cindya Santana," CHARLES OKOYE, and UCHE CHUKWUDI, | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Aiding and Abetting; 42 U.S.C. § 1320a-7b(b)(2): Illegal Remunerations for Health Care Referrals] |
| Defendants. | |

The Grand Jury charges:

## COUNT ONE

[18 U.S.C. § 1349]

I.  GENERAL ALLEGATIONS

    A.  The Defendants

    1.  Adelco Medical Distributors, Inc. ("Adelco") was a durable medical equipment ("DME") supply company located at 15223 South Crenshaw Boulevard, Suite #B, Gardena, California 90249, within the Central District of California.

    2.  Defendant ADELINE EWKEBELEM, also known as ("aka") "Adeline Maduabuchi" ("defendant EKWEBELEM"), enrolled Adelco as a Medicare provider in or about June 2002.

    3.  Between in or about November 2008, and in or about May 2011, defendant ROMIE PORTER TUCKER, JR., aka "Romy," aka "Roman," aka "Ron" ("defendant TUCKER"), worked as a marketer for Adelco.

    4.  Between in or about March 2011, and in or about November 2011, defendant MARITZA HERNANDEZ ("defendant HERNANDEZ") worked as a marketer for Adelco.

    5.  Between in or about October 2009, and in or about August 2010, defendant CINDY SANTANA, aka "Cindya Santana" ("defendant SANTANA"), worked as a marketer for Adelco.

    6.  Between in or about November 2008 and in or about November 2011, defendant CHARLES OKOYE ("defendant OKOYE"), a licensed physician and enrolled Medicare provider, referred more than 200 Medicare beneficiaries to Adelco for DME, primarily power wheelchairs ("PWCs"), from his medical clinic, located at 4405 South Main Street in Los Angeles, California.  Defendant OKOYE also billed Medicare for services he allegedly provided to

approximately 150 of those beneficiaries.

7. Between in or about June 2010 and in or about October 2011, defendant UCHE CHUKWUDI ("defendant CHUKWUDI"), a licensed physician and enrolled Medicare provider, referred more than 200 Medicare beneficiaries to Adelco for DME, primarily PWCs, from his medical clinic, located at 15425 Crenshaw Boulevard in Gardena, California. Defendant CHUKWUDI also billed Medicare for services he allegedly provided to those beneficiaries.

8. Between in or about January 2007, and in or about December 2011, Adelco submitted approximately $7,350,695 in claims to Medicare, primarily for PWCs, for which Medicare paid Adelco approximately $3,452,299, representing more than approximately 90% of Adelco's revenue during the period.

9. Of the claims Adelco submitted to Medicare, approximately $1,710,143 were for patients referred by defendant OKOYE, for which Medicare paid Adelco approximately $824,566.

10. Of the claims Adelco submitted to Medicare, approximately $1,185,464 were for patients referred by defendant CHUKWUDI, for which Medicare paid Adelco approximately $539,254.

B. **The Medicare Program**

11. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

12. CMS contracted with private insurance companies to certify DME providers for participation in the Medicare program

3

and monitor their compliance with Medicare standards, to process and pay claims, and to perform program safeguard functions, such as identifying and reviewing suspect claims.

13. Noridian Administrative Services ("Noridian") processed and paid Medicare DME claims in Southern California.

14. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

15. DME companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

16. To obtain reimbursement from Medicare, DME companies and physicians first had to apply for and obtain a provider number. By signing the provider application, DME companies and physicians agreed to abide by all Medicare rules and regulations, including the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)), which, among other things, prohibits the payment of kickbacks or bribes for the referral of Medicare beneficiaries for any item or service for which payment may be made by Medicare.

17. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, which enabled the provider to submit claims to Medicare for services rendered to Medicare beneficiaries.

18. Most DME providers, including Adelco, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and

truthful. Under these agreements, DME providers are required to retain all original source documentation supporting the claims for 6 years and 3 months after the claim is paid.

19. Medicare required a claim for Medicare reimbursement of DME to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date the DME was provided, and the name and unique physician identification number of the physician who prescribed or ordered the DME.

20. DME providers were only entitled to Medicare reimbursement for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be reimbursed by Medicare. Medicare required claims to be truthful, complete, and not misleading.

21. Medicare had a co-payment requirement for DME. Medicare reimbursed providers 80% of the allowed amount of a DME claim and the beneficiary was ordinarily obligated to pay the remaining 20%.

## II. THE OBJECT OF THE CONSPIRACY

22. Beginning in or about January 2007, and continuing to in or about December 2011, in Los Angeles County, within the Central District of California and elsewhere, defendant EKWEBELEM, joined by defendant TUCKER from in or about November 2008 to in or about May 2011, defendant HERNANDEZ from in or about March 2011 to in or about November 2011, defendant SANTANA

5

from in or about October 2009 to in or about August 2010, defendant OKOYE from in or about November 2008 to in or about November 2011, and defendant CHUKWUDI from in or about June 2010 to in or about October 2011, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

**III. THE MANNER AND MEANS OF THE CONSPIRACY**

23. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. Defendant EKWEBELEM would pay "marketers," including defendant TUCKER, defendant HERNANDEZ, and defendant SANTANA, to solicit Medicare beneficiaries for Adelco.

    b. Defendant TUCKER, defendant HERNANDEZ, and defendant SANTANA would solicit beneficiaries, offering them medically-unnecessary PWCs, hospital beds, orthotics, and other DME for free.

    c. At defendant EKWEBELEM's instruction, defendant TUCKER, defendant HERNANDEZ, and defendant SANTANA would take the beneficiaries to see doctors, including defendant OKOYE and defendant CHUKWUDI, chosen by defendant EKWEBELEM and then take the beneficiaries to Adelco, where the beneficiaries provided their HICNs and other patient information to Adelco.

    d. For these beneficiaries, defendant OKOYE and defendant CHUKWUDI would create fraudulent patient files that included PWC prescriptions and false statements in face-to-face examination forms ("FTF forms") purporting to support the medical need for the DME, even though defendant OKOYE and

defendant CHUKWUDI knew the beneficiaries did not medically need PWCs and even though defendant OKOYE never even examined some of the beneficiaries. Defendant OKOYE would direct the patients to Adelco to fill the prescriptions, knowing that Adelco would bill Medicare for the provision of that DME.

  e. Defendant OKOYE and defendant CHUKWUDI would also bill and receive payments from Medicare for office visits and diagnostic tests allegedly provided to beneficiaries brought to him by Adelco's marketers.

  f. Defendant EKWEBELEM would purchase or otherwise obtain fraudulent prescriptions for DME and other medical documentation for the beneficiaries, including false FTF forms from defendant OKOYE, defendant CHUKWUDI, and other doctors.

  g. Sometimes defendant OKOYE, defendant CHUKWUDI, and other doctors would provide Adelco with pre-signed FTF forms that were blank except for the basic patient information and doctor's signature, in which case either defendant EKWEBELEM or Adelco employees acting at defendant EKWEBELEM's instruction would complete the form with additional information aimed at justifying the medical necessity of the DME.

  h. As defendant TUCKER, defendant HERNANDEZ, and defendant SANTANA well knew, defendant EKWEBELEM would use the Medicare beneficiary names, HICNs, and other patient information for beneficiaries solicited by defendant TUCKER, defendant HERNANDEZ, defendant SANTANA, and other marketers to submit false and fraudulent claims under Adelco's provider number to Medicare for PWCs, hospital beds, orthotics, and other DME that

were not medically necessary and in some cases not provided to Medicare beneficiaries as represented in the claims.

   i. Defendant EKWEBELEM would direct that Medicare payments on the claims Adelco submitted be deposited into Adelco's business bank account at Bank of America, account number xxxxx-x5603 (the "Adelco Bank Account"), which she controlled.

   j. From the approximately $3,452,299 Medicare paid to Adelco between in or about January 2007, and in or about December 2011, defendant EKWEBELEM would write checks from the Adelco Bank Account and pay cash to marketers and doctors, including defendant TUCKER, defendant HERNANDEZ, defendant SANTANA, defendant OKOYE, and defendant CHUKWUDI, in exchange for their referring Medicare beneficiaries to Adelco. Defendant EKWEBELEM would adjust the payments to defendant TUCKER, defendant HERNANDEZ, defendant SANTANA, and other marketers according to the DME ordered for the beneficiaries and the doctors to whom the beneficiaries were taken. Defendant EKWEBELEM would only pay the marketers if Medicare paid Adelco for the DME for the recruited beneficiaries. Defendant EKWEBELEM would often require the marketers to refund any advance payment defendant EKWEBELEM had made to them if Medicare subsequently denied the claim.

   k. Defendant EKWEBELEM would also write approximately $629,009 in checks to herself and withdraw approximately $853,091 in cash from the Adelco Bank Account.

<div align="center">COUNTS TWO THROUGH EIGHTEEN

[18 U.S.C. §§ 1347, 2(b)]</div>

## I. INTRODUCTORY ALLEGATIONS

24. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 19 and 21 of this Second Superseding Indictment as if fully set forth herein.

## II. THE SCHEME TO DEFRAUD

25. Beginning in or about January 2007, and continuing until in or about December 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant EKWEBELEM, joined by defendant TUCKER from in or about November 2008 to in or about May 2011, defendant HERNANDEZ from in or about March 2011 to in or about November 2011, defendant SANTANA from in or about October 2009 to in or about August 2010, defendant OKOYE from in or about November 2008 to in or about November 2011, and defendant CHUKWUDI from in or about June 2010 to in or about October 2011, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed a scheme and artifice: (a) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

## III. THE FRAUDULENT SCHEME

26. The fraudulent scheme operated, in substance, as described in paragraph 21 of this Second Superseding Indictment, which is hereby incorporated by reference as if fully set forth herein.

## IV. EXECUTION OF THE FRAUDULENT SCHEME

27. On or about the dates set forth below, within the Central District of California, and elsewhere, the following defendants, together with others known and unknown to the Grand Jury, for the purpose of executing the scheme to defraud described above, knowingly and willfully submitted and caused to be submitted to Medicare the following false and fraudulent claims:

| Count | Defendant(s) | Approx. Date Claim Submitted | Beneficiary and Service | Amount Claimed | Claim No. |
|---|---|---|---|---|---|
| TWO | EKWEBELEM | 4/15/2008 | B.P. - Motorized wheelchair and accessories | $5,900.00 | 08106809988000 |
| THREE | EKWEBELEM | 4/25/2008 | M.M. - Motorized wheelchair and accessories | $5,900.00 | 08116806365000 |
| FOUR | EKWEBELEM, SANTANA, OKOYE | 8/9/2010 | F.D. - Motorized wheelchair and accessories | $6,570.09 | 10221874264000 |
| FIVE | EKWEBELEM, TUCKER | 9/7/2010 | B.M. - Motorized wheelchair and accessories | $7,104.13 | 10250893264000 |
| SIX | EKWEBELEM, TUCKER, CHUKWUDI | 9/29/2010 | M.A. - Motorized wheelchair and accessories | $7,061.07 | 10272854220000 |

| Count | Defendant(s) | Approx. Date Claim Submitted | Beneficiary and Service | Amount Claimed | Claim No. |
|---|---|---|---|---|---|
| SEVEN | EKWEBELEM, TUCKER, CHUKWUDI | 11/1/2010 | W.G. - Motorized wheelchair and accessories, orthotics | $7,967.94 | 10305879819000 |
| EIGHT | EKWEBELEM, OKOYE | 2/9/2011 | E.U. - Motorized wheelchair (rental) and accessories | $2,667.58 | 11040843333000 |
| NINE | EKWEBELEM, OKOYE | 4/22/2011 | E.U. - Motorized wheelchair (rental) and accessories | $1,400.00 | 11112806764000 |
| TEN | EKWEBELEM, HERNANDEZ, CHUKWUDI | 7/11/2011 | P.O. - Motorized wheelchair (rental) and accessories | $4,651.08 | 11192886051000 |
| ELEVEN | EKWEBELEM, SANTANA, OKOYE | 10/19/2009 | J.C. - Motorized wheelchair and accessories | $9,650.00 | 09292861755000 |
| TWELVE | EKWEBELEM, SANTANA, OKOYE | 10/19/2009 | M.C. - Motorized wheelchair and accessories | $9,650.00 | 09292861758000 |
| THIRTEEN | EKWEBELEM, SANTANA, OKOYE | 4/28/2010 | A.D. - Motorized wheelchair and accessories | $5,890.00 | 10118837597000 |
| FOURTEEN | EKWEBELEM, OKOYE | 8/18/2010 | R.C. - Motorized wheelchair and accessories | $6,570.09 | 10230845726000 |
| FIFTEEN | EKWEBELEM, OKOYE | 10/21/2010 | R.C. - Motorized wheelchair and accessories | $5,390.00 | 10294801316000 |
| SIXTEEN | EKWEBELEM, CHUKWUDI | 11/8/2010 | A.M. - Motorized wheelchair and accessories, orthotic | $7,167.58 | 10312877926000 |

| Count | Defendant(s) | Approx. Date Claim Submitted | Beneficiary and Service | Amount Claimed | Claim No. |
|---|---|---|---|---|---|
| SEVENTEEN | EKWEBELEM, CHUKWUDI | 11/23/2010 | J.M. - Motorized wheelchair and accessories, orthotic | $7,167.54 | 10327858400000 |
| EIGHTEEN | EKWEBELEM, HERNANDEZ, CHUKWUDI | 7/1/2011 | G.F. - Motorized wheelchair (rental) and accessories | $2,051.08 | 11182849574000 |

## COUNTS NINETEEN THROUGH TWENTY-ONE

[42 U.S.C. § 1320a-7b(b)(2)]

[Defendant EKWEBELEM]

28. The Grand Jury hereby repeats and realleges paragraphs 1-19 and 21 of this Second Superseding Indictment as if fully set forth herein.

29. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant EKWEBELEM, together with others known and unknown to the Grand Jury, knowingly and willfully offered and paid remuneration, that is, either cash or checks payable in or about the amounts set forth below, to defendant Tucker, defendant Hernandez, and defendant Santana, to induce defendant Tucker, defendant Hernandez, and defendant Santana to refer individuals to Adelco for DME for which payment could be made in

whole and in part under a Federal health care program, namely Medicare.

| Count | Approx. Date | Transaction |
|---|---|---|
| NINETEEN | 7/13/2010 | Check number 3367, drawn on the Adelco Bank Account, in the amount of $1,200.00, payable to defendant Santana |
| TWENTY | 10/28/2010 | Cash payment of $400 to defendant Tucker |
| TWENTY-ONE | 7/8/2011 | Check number 3935, drawn on the Adelco Bank Account, in the amount of $550.00, payable to defendant Hernandez |

                                              A TRUE BILL

                                              /S/
                                              _____
                                              Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Major Frauds Section